# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEMA LOPEZ, | CASE NO. CV-F-11-901  LJO |
|          Appellant, | **ORDER ON BANKRUPTCY APPEAL** |
|    vs. | |
| JOHN PAGLIERO and THE PAGLIERO FAMILY REVOCABLE LIVING TRUST, | |
|          Appellees. | |

## INTRODUCTION

Appellant Gema Lopez ("Ms. Lopez") appeals an order of the United States Bankruptcy Court for the Eastern District of California ("bankruptcy court") ruling that the debt Ms. Lopez owed to Appellees John Pagliero ("Mr. Pagliero") and the Pagliero Family Revocable Living Trust ("Trust") was non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(A) ("Section 523(a)(2)(A)"). Ms. Lopez argues that the bankruptcy court made numerous factual errors resulting in a clearly erroneous conclusion that Ms. Lopez obtained loans from Mr. Pagliero with the intent to deceive at the time the loans were made. In addition, Ms. Lopez asserts that the bankruptcy court improperly considered statements of her financial condition. In response, Mr. Pagliero argues that the preponderance of the evidence supports the bankruptcy court's findings of fact. Moreover, Mr. Pagliero contends that Ms. Lopez improperly raises the failure to consider financial condition argument for the first time on appeal, and challenges the argument on its merits. For the following reasons, this Court AFFIRMS the bankruptcy court's order.

## BACKGROUND[1]

## $60,000 Loan in 2005-2006

Mr. Pagliero met Ms. Lopez through an exclusive dating service in early 2005.[2] When they met, Ms. Lopez was employed at Fair Isaacs as a manager and graphic artist. She had been employed at Fair Isaacs for approximately eleven years.

Shortly after they began dating, Ms. Lopez indicated to Mr. Pagliero that she wanted to pursue her desire to be a fine artist. Ms. Lopez told Mr. Pagliero that if she could just be supported for one year to develop her art, she would generate at least the same income she did at Fair Isaac. The discussion developed into the first loan from Mr. Pagliero to Ms. Lopez. At the time of the loan, Mr. Pagliero considered Ms. Lopez to be a "very professional person." He had seen her work and believed her to be an outstanding painter.

Mr. Pagliero loaned Ms. Lopez $60,000 so that she could quit her job and pursue her dream of becoming an artist. The $60,000 was loaned from Mr. Pagliero's children's college fund. Mr. Pagliero testified that Ms. Lopez agreed to use the money to pay her bills and paint 40-60 hours a week. Ms. Lopez agreed that she promised to pay back the loan through the sale of her home. According to Mr. Pagliero, Ms. Lopez further agreed to pay back the loan by either selling the artwork she produced or going back to work at Fair Isaacs. Mr. Pagliero began paying Ms. Lopez in monthly installments of $5,000. Mr. Pagliero paid Ms. Lopez $5,000 per month from July 2005 through July 2006.[3] During that one-year period of time, Ms. Lopez produced two or three paintings.

Mr. Pagliero agreed to loan Ms. Lopez the money without having complete information about Ms. Lopez. For example, in March 2005, at the time the couple began dating, Ms. Lopez refinanced her home, obtained and interest-only note, and cashed out a large amount of equity. From the refinancing, she received $50,000, part of which she used to pay off credit card debt she had incurred. She received

---

[1] This section contains an abridged version of relevant material facts. Unless otherwise noted, the facts are undisputed.

[2] The parties were unable to recall most dates with specificity.

[3] There is conflicting evidence on whether the payments began in September 2005 or July 2005, but all parties agree that Mr. Pagliero loaned Ms. Lopez $60,000 and paid her in $5,000 monthly installments.

approximately $20,000 in cash. Moreover, at the time she quit her job at Fair Isaacs, Ms. Lopez's department was in the process of being eliminated. Thus, Ms. Lopez was in danger of losing her job, and would have been unable to return to the position she held. Ms. Lopez also failed to disclose to Mr. Pagliero that she had filed for bankruptcy prior to their agreement. Ms. Lopez admitted that she shared none of these facts with Mr. Pagliero. Mr. Pagliero testified that had he known these facts, he would not have loaned Ms. Lopez the money. He testified that he thought her finances were in order. The couple kept their finances separate, and never shared financial information with each other.

**September 1, 2006 Written Agreement, Installment Note and Deed of Trust**

Ms. Lopez and Mr. Pagliero were married on July 15, 2006. Shortly upon their return from their honeymoon, Mr. Pagliero discovered that Ms. Lopez had accumulated approximately $42,000 in credit card debt during the 2005-2006 year. Mr. Pagliero offered to loan Ms. Lopez money to pay off the credit card debt. In addition, Ms. Lopez asked Mr. Pagliero to continue to support her living expenses for their first year of marriage. At the time, they were living in separate residences. He was living in his house in Napa, California, while she lived in her home in Oakland, California. Mr. Pagliero offered to loan Ms. Lopez additional funds to pay off her credit card debt and to pay living expenses for the first year of their marriage. Ms. Lopez accepted Mr. Pagliero's offer.

On September 1, 2006, the parties entered into an agreement ("Agreement") wherein Mr. Pagliero agreed to loan Ms. Lopez a total of $150,000. The relevant portions of the Agreement are as follows:

> The $150,000 loan to Gema Lopez is to be secured by a lien against her residence. The loan is to pay off old debt and help with living expenses.
>
> The loan agreement for the amount of $60,000 was to help Gema Lopez living during 2005 and 2006. $60,000.00 with [sic] be paid back to Caleb and Sarah Pagliero College Fund. Funds were paid to Gema Lopez in $5000 month sums. The last check was funded July 2006.
>
> $42,418.20 will be paid to credit card debt of Gema Lopez.
>
> The rest of the money will be used to assist Gema Lopez in her daily living expenses while she is working in her Artist Studio, to establish her painting career or may [sic] elect to engage in other employment. This agreement will help both parties Gema Lopez and John Pagliero support their individual residences. Until [sic] both parties can establish residence together in Alameda, CA.

Both parties signed the Agreement.

3

On the same day, Ms. Lopez signed an Installment Note in the amount of $150,000. In the Installment Note, Ms. Lopez agreed to repay the Trust the principal amount with interest at a rate of 7.5%. According to the Installment Note, Ms. Lopez was to repay the Trust by making $937.50 monthly installments. Ms. Lopez testified that she made one or two payments.

In addition to the Written Agreement and Installment Note, Mr. Pagliero recorded a Deed of Trust on October 13, 2006 secured by Ms. Lopez's residence located in Oakland, California on behalf of the Trust. At the time the parties entered into the Agreement, Mr. Pagliero believed that Ms. Lopez owed $305,000.00. As set forth above, Ms. Lopez failed to disclose that she took an interest-only $50,000 loan in March 2005. Mr. Pagliero further believed that the value of Ms. Lopez's residence was $540,000.00. Accordingly, Mr. Pagliero believed that Ms. Lopez had $180,000.00 in equity in her Oakland home at the time the parties entered into the agreement. Mr. Pagliero later learned that the lender held a promissory note in the amount of $359,650.00.

**Course of Conduct After Agreement**

During the first year of marriage (2006-2007), Ms. Lopez produced approximately twelve to fourteen paintings. Although Ms. Lopez admitted that she agreed to repay the loan through sale of her home, she further admitted that she never listed her house for sale. According to Ms. Lopez, the parties agreed that she needed to make improvements to her home before it could be listed. Mr. Pagliero contacted a real estate agent to inquire about selling Ms. Lopez's home, but she did not. Mr. Pagliero also listed his home for sale in 2005 and 2006. He took it off the market in 2007 because of a decline in the market value.

According to her separately-filed income tax returns, Ms. Lopez withdrew $14,791 from her IRA in 2006 and $29,120 from her IRA in 2007. These withdrawals exhausted her retirement account. Mr. Pagliero did not know that Ms. Lopez withdrew these amounts from her IRA and Ms. Lopez admitted that she did not tell Mr. Pagliero about the withdrawals. Both parties admitted that Mr. Pagliero loaned Ms. Lopez the original $60,000 so that Ms. Lopez could preserve her retirement funds. Ms. Lopez testified that she withdraw money from her retirement account in 2006 to improve her home to ready it for sale, but didn't explain how she used the money in 2007 or why she did not tell her husband about the withdrawals.

4

In their second year of marriage (2007-2008), the parties attempted to live together in Alameda, California. During that time, Ms. Lopez rented out her home. Rental income from the home went towards her mortgage. In addition, Ms. Lopez used money advanced by Mr. Pagliero to cover the deficiency between the mortgage payment and her rental income.

According to Mr. Pagliero, the marriage began to fall apart after the parties learned that Mr. Pagliero would not receive a sizable inheritance that he had been expecting. The parties separated in November 2008, with the dissolution of marriage finalized in June 2009.

**Bankruptcy Court Proceedings**

Ms. Lopez filed a Chapter 7 Voluntary Petition in which she named Mr. Pagliero and the Trust as creditors. Mr. Pagliero initiated an adversary proceeding to challenge the dischargeability of the $150,000 loan. Mr. Pagliero claimed that the debt was non-dischargeable pursuant to Section 523(a)(2)(A). Mr. Pagliero alleged that he loaned Ms. Lopez $150,000 after he reasonably relied on Ms. Lopez's false representations, which she knew to be false and were made with the intent to deceive. A court trial was held on February 22, 2011 on the matter.

On May 18, 2011, the bankruptcy court filed a written order ("Adversary Order"), ruling in favor of Mr. Pagliero. The bankruptcy court found that the $150,000 was a non-dischargeable debt pursuant to Section 523(a)(2)(A). The bankruptcy court concluded that Ms. Lopez is indebted to Mr. Pagliero in the sum of $150,000 plus interest. The bankruptcy court denied Mr. Pagliero's request for attorney's fees, however, ruling that Mr. Pagliero failed to offer proof of fees at trial. Ms. Lopez timely appealed.

**ISSUE PRESENTED**[4]

Whether the bankruptcy court erred in holding that Mr. Pagliero had proven by a preponderance of the evidence that Ms. Lopez obtained loans from Mr. Pagliero with the intent to deceive to except the debt from discharge pursuant to Section 523(a)(2)(A).

---

[4] This is the sole issue presented by Ms. Lopez in her opening memorandum, as reformulated by this Court. In the June 14, 2011 Statement of the Issues on Appeal ("Statement of Issues"), Ms. Lopez identified three issues. The issue presented and discussed in the opening memorandum appears to be a sub-issue of both the first and second issues presented in the Statement of Issues. As discussed more fully below, Ms. Lopez waived the third issue presented in the Statement of Issues by failing to address this issue in her opening memorandum. Moreover, as discussed more fully below, Ms. Lopez argues a separate issue that was not identified either in the Statement of Issues or as an issue presented in the opening memorandum.

## STANDARD OF REVIEW

Whether a claim is dischargeable presents mixed questions of law and fact. *Peklar v. Ikerd*, 260 F.3d 1035, 1037 (9th Cir. 2001). A district court reviews de novo a bankruptcy court's conclusions of law. *Paulman v. Gateway Venture Partners III*, 163 F.3d 570, 575 (9th Cir. 1998). Findings of fact by the bankruptcy judge, however, shall not be disturbed unless they are clearly erroneous. Fed. R. Bankr. Proc. 8013; *see also, Diamond v. City of Taft*, 215 F.3d 1052, 1055 (9th Cir. 2000), *cert. denied*, 521 U.S. 1072 (2001) (court reviews pure issues of fact for clear error). Review under the "clearly erroneous" standard is "significantly deferential." *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 623, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993) (quotations omitted); *Security Farms v. Intern. 'l Bhd. of Teamsters*, 124 F.3d 999, 1014 (9th Cir.1997). Under this standard, this Court can overturn the bankruptcy judge's ruling only if it "is left with the definite and firm conviction that a mistake has been committed." *Avalos v. Foster Poultry Farms,* – F.Supp.2d. –, 2011 WL 3190017, *2 (E.D. Cal. 2011).

## DISCUSSION

Ms. Lopez contends that the bankruptcy court erred to find the debt to be dischargeable pursuant to Section 523(a)(2)(A). "Section 523(a)(2)(A) prohibits the discharge of any enforceable obligation for money, property, services, or credit obtained by fraud, false pretenses, or false representations." *In re Sabban*, 600 F.3d 1219, 1220 (9th Cir. 2010). To establish a debt as non-dischargeable under this section, the creditor must demonstrate the following five elements:

> (1) the debtor made...representations;
> (2) that at the time he knew they were false;
> (3) that he made them with the intention and purpose of deceiving the creditor;
> (4) that the creditor relied on such representations; [and]
> (5) that the creditor sustained the alleged loss and damage as a proximate result of the misrepresentations that have been made.

*In re Sabban*, 600 F.3d 1219, 1222 (9th Cir. 2010). Mr. Pagliero, as the creditor, bore the burden to establish these elements. *See Id.* The bankruptcy court found that Mr. Pagliero established each of these elements. Ms. Lopez appeals the bankruptcy court order, arguing that the preponderance of the evidence fails to establish the third element of a Section 523(a)(2)(A) claim of non-dischargeability; to wit, that she had the intent to deceive Mr. Pagliero. This Court considers Ms. Lopez's arguments below.

6

**Intent to Defraud**

Ms. Lopez argues that the evidence fails to establish that she had the intent to deceive Mr. Pagliero. Whether Mr. Pagliero has proven an essential element of a cause of action under Section 523(a)(2)(A) is a factual determination reviewed for clear error. *Am. Express Travel Releated Servs. Co., Inc. v. Vee Vinhnee*, 336 B.R. 437, 443 (9th Cir. BAP 2005).

The bankruptcy court ruled that the "intent to deceive may be found from the surrounding circumstances some of which are set forth above." Discharge Order, p. 7. The bankruptcy court did not set forth all of the facts upon which this finding of fact was based. In separate paragraphs, however, the bankruptcy court made the following findings, applicable to the question of intent to deceive:

1. Ms. Lopez failed to disclose to Mr. Pagliero that she had an IRA or 401K account at her work and had he known that fact, he would not have loaned her the money. Adversary Order, p.5

2. Ms. Lopez knowingly failed to disclose that she was about to lose her job, since her department was being discontinued at Fair Issacs. Adversary Order, pp. 5, 6. The Court found that Ms. Lopez falsely represented her employment status. Adversary Order, p. 7.

3. Ms. Lopez failed to disclose that she had filed for bankruptcy about eight years prior to the time that Mr. Pagliero loaned her money. Adversary Order, p. 5.

4. Ms. Lopez knowingly concealed the fact that she had borrowed money against her Oakland house in March 2005, used up all of the equity in her home, and left no equity in the home from which Mr. Pagliero could be repaid his loan. Adversary Order, pp. 5, 7.

5. Ms. Lopez failed to disclose that she had a large credit card debt that extended prior to their marriage and before they met before the loan was made. Adversary Order, pp. 5, 7.

6. Ms. Lopez did not disclose that her intent was not to work sufficiently to garner sufficient funds to make any payments of her loan to Plaintiff. Adversary Order, p. 6.

7. During the period 2006-200, Ms. Lopez cashed out her retirement account. She did not repay Mr. Lopez any sums from this account and instead used these funds for something other than repayment of her loan. Adversary Order, p. 7.

The bankruptcy court's findings of fact support the ultimate finding that Ms. Lopez intended to defraud Mr. Pagliero. A debtor's intent to defraud may be established by circumstantial evidence or by interferences drawn from his or her course of conduct. *Fogal Legwear of Switz., Inc. v. Wills*, 243 B.R. 58, 64 (9th Cir. BAP 1999). A court may determine intent to defraud under Section 523(a)(2)(A) based on the totality of the circumstances when the trier of fact is convinced by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 286 (1991). "A court may infer the existence of the debtor's intent not to pay if the facts and circumstances of a particular case present a picture of deceptive conduct by the debtor." *In re Hashemi*, 104 F.3d 1122, 1125 (9th Cir. 1996). In concluding that Ms. Lopez had the intent to deceive, the bankruptcy court appropriately considered the inferences drawn from Ms. Lopez's course of conduct, which included, *inter alia*, Ms. Lopez's failure to disclose to Mr. Pagliero that she: (1) was about to lose her job; (2) amassed a large amount of credit card debt during the time they were dating; (3) borrowed money on her house a few months before the original loan was made; (4) has previously filed for bankruptcy; and (5) cashed out her retirement during their marriage. In addition, Ms. Lopez failed to produce more than three paintings during the year that she was to work as an artist and never attempted to sell her home, despite her admission that she agreed to repay the loan by selling it. Based on this evidence, almost all of which is undisputed, the bankruptcy court's decision was sound.

Ms. Lopez fails to establish that the bankruptcy court's findings of fact were clearly erroneous. Ms. Lopez argues that the bankruptcy court "made numerous factual errors in finding that Lopez had the intent to deceive at the time she received funds from Pagliero." Opening Brief, p. 11. To support this statement, Ms. Lopez provides a lengthy, six-page restatement of evidence presented at trial. This presentation of facts fails to establish that the bankruptcy court's findings of fact were clearly erroneous.

Moreover, Ms. Lopez's position ignores the relevant inquiry. A determination of a debtor's intent to deceive is made when considering the course conduct of the debtor, not the creditor. *In re Hashemi*, 104 F.3d at 1125. Ms. Lopez's argument focuses on what Mr. Pagliero knew, rather than Ms. Lopez's actions or inaction, including Ms. Lopez's repeated failures to disclose important information to him. Ms. Lopez's arguments are more relevant to whether Mr. Pagliero's reliance on Ms. Lopez's representations was reasonable or justified; however, Ms. Lopez does not challenge this finding of fact

on appeal.

Similarly, Ms. Lopez's assertion that an intent to deceive is reviewed at the time the funds were transferred also appears to be misplaced. Ms. Lopez insists that the bankruptcy court erred to consider Ms. Lopez's actions *after* the parties entered into the agreement, yet cites no legal authority to support this legal assertion. As set forth above, the bankruptcy court properly considers the debtors course of conduct over a period of time to make inferences based on intent. When the creditor made certain representations is relevant to inquiry of justifiable reliance, but does not affect the analysis of intent. *See In re White*, 412 B.R. 860, 866 (B.C. W.Va. 2009).

Ms. Lopez contends that the bankruptcy court erred in its factual finding that Ms. Lopez concealed her withdrawal from her retirement accounts. She argues that she withdrew retirement funds in 2006 to improve her residence, which was the security for the Agreement and Installment Note she executed in favor of Mr. Pagliero. Ms. Lopez's position ignores her admissions that she withdrew from her retirement account in both 2006 and 2007. More importantly, Ms. Lopez's argument fails to address her own admission at trial that she never told Mr. Pagliero about the withdrawals. Based on these undisputed facts, the bankruptcy court could have drawn an inference that Ms. Lopez intended to defraud Mr. Pagliero by failing to disclose that she withdrew those funds after the parties entered into the Agreement.

Ms. Lopez also challenges the bankruptcy court's finding of fact that Ms. Pagliero knew that she her employment was subject to termination at the time she resigned. On this point, the bankruptcy court found that the "testimony is convincing by a preponderance of the evidence that the defendant knew her job at Fair Isaac was going to be terminated because the department itself was being dropped and she failed to disclose this fact to Plaintiff before she borrowed funds." Adversary Order, p. 7. "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." Fed. R. Bankr. Proc. 8013; *see also*, Fed. R. Civ. P. 52(a)(6). While Ms. Lopez testified that she did not know that her employment group had been terminated until days after she resigned, this Court defers to the bankruptcy court on matters of witness credibility. Having throughly reviewed the record, this Court is not left with the conviction that clear error has been made on this finding of fact.

Ms. Lopez maintains that the evidence confirms that she had no intent to deceive Mr. Pagliero since Mr. Pagliero was aware that Ms. Lopez wanted to terminate her employment and he "advance[d] funds to her without any realistic probability of repayment other than through his security interest in her residence." Opening Memo, p. 20. This "evidence" was disputed at trial. While Ms. Lopez testified that she agreed to repay Mr. Lopez only in the form of a sale of her Oakland home, Mr. Pagliero testified that Ms. Lopez agreed to repay the loan in one of three ways: (1) she would work full-time as an artist, produce artwork and sell the artwork; (2) she would return to her job at Fair Isaacs; or (3) she would sell her home. It was within the discretion of the bankruptcy judge to determine whose testimony to believe. The Court defers to the bankruptcy's court's decision to believe Mr. Pagliero's testimony. Moreover, Ms. Lopez's testimony that she only agreed to repay the $60,000 loan through the sale of her home is contradicted by the Agreement. According to the Agreement, Ms. Lopez agreed that during the time of the $150,000 loan, she would be painting or get other employment. Accordingly, Ms. Lopez has failed to establish that this finding of fact to be clearly erroneous.

The evidence supports the bankruptcy's judge's finding that Ms. Lopez had an intent to defraud Mr. Pagliero, when considering Ms. Lopez's course of conduct from 2005-2007, including: (1) her failure to disclose that she was about to lose her job because of the discontinuance of her department; (2) her failure to disclose the large credit card debt she amassed after Mr. Pagliero loaned her $60,000; (3) her failure to disclose that she borrowed money on her house, depleting its equity; (4) her failure to disclose her bankruptcy; (5) her failure to produce any artwork during the year she promised to work 40-60 hours to pursue her dream to become an artist; (6) her failure to disclose that she depleted all funds in her retirement account; and (7) Ms. Lopez admittedly never attempted to list her home for sale. While the Court understands Ms. Lopez's position and argument, the bankruptcy court's findings of fact were based on undisputed evidence, discretionary credibility determinations, and reasonable inferences based on the evidence. Having reviewed the record, this Court is not convinced that the bankruptcy court committed clear error in its finding of fact that Ms. Lopez acted with the intent to deceive.

**Statements Respecting the Debtor's Financial Condition**

Although not presented as a separate issue on appeal, Ms. Lopez argues that the bankruptcy court

improperly considered oral statements respecting her financial condition.[5] Ms. Lopez contends that Section 523(a)(2)(A) excludes from exceptions to discharge "a statement respecting the debtor's or insider's financial condition." Ms. Lopez argues that based on this provision the bankruptcy court erred to consider statements Ms. Lopez made regarding either her ability to repay the loan or her financial condition resulting from her ability to generate income to determine dischargeability. This is a mixed question of fact and law, which this Court reviews de novo. *Peklar*, 260 F.3d at 1037.

As set forth above, debts obtained by "false pretenses, a false representation, or actual fraud" are non-dischargeable. 11 U.S.C. §523(a)(2)(A). This non-dischargeability provision contains an exception. "If a debt is obtained by a false *oral* 'statement respecting the debtor's ... financial condition,' the debt is dischargeable. By contrast, 11 U.S.C. § 523(a)(2)(B) states that a debt obtained by a false *written* statement 'respecting the debtor's ... financial condition' is *not* dischargeable, provided certain conditions are met." *In re Joelson*, 427 F.3d 700, 707 (10th Cir. 2005), *cert. denied*, 547 U.S. 1163 (2006) (emphasis in original).[6] Thus, a court may not except from discharge a debt based on oral statements related to a debtor's financial condition.

Ms. Lopez contends that statements regarding her ability to repay the loan or her ability to generate income were oral statements related to her financial condition. This Court disagrees, relying on the well-reasoned legal analysis set forth in *In re Joelson*, 427 F.3d at 707-15. The *Joelson* Court

---

[5] Mr. Pagliero argues that Ms. Lopez waived this argument, because she raises it for the first time on appeal. Ms. Lopez failed to address Mr. Pagliero's waiver argument in her reply memorandum, apparently conceding the point. As a general rule, this Court does not consider an issue raised for the first time on appeal. *See, Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006). Accordingly, this Court rejects Ms. Lopez's argument on appeal for the additional reason that it has been waived.

[6] Section 523(a)(2) reads, in relevant part:
A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; [or]
(B) use of a statement in writing--
    (i) that is materially false;
    (ii) respecting the debtor's or an insider's financial condition;
    (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
    (iv) that the debtor caused to be made or published with intent to deceive;
11 U.S.C. §523(a).

11

explains that the phrase "statement respecting the debtor's financial condition" refers to:

> such false statements are those that purport to present a picture of the debtor's overall financial health. Statements that present a picture of a debtor's overall financial health include those analogous to balance sheets, income statements, statements of changes in overall financial position, or income and debt statements that present the debtor or insider's net worth, overall financial health, or equation of assets and liabilities. However, such statements need not carry the formality of a balance sheet, income statement, statement of changes in financial position, or income and debt statement. What is important is not the formality of the statement, but the information contained within it-information as to the debtor's or insider's overall net worth or overall income flow.

427 F.3d at 714.

Here, the misrepresentations and omissions considered by the bankruptcy court were properly considered pursuant to Section 523(a)(2)(A). The bankruptcy court did not consider oral statements made by Ms. Lopez related to her balance sheet, income statement or debt statement. Indeed, both parties testified that they maintained separate accounts and it is undisputed that Ms. Lopez never disclosed her overall financial health to Mr. Pagliero. The bankruptcy court properly considered Ms. Lopez's failure to disclose that she refinanced her home and depleted the equity in it, while representing to Mr. Pagliero that she would repay the loan based on the sale of the home. *See In re Joelson*, 427 F.3d at 715 (citing *Bal-Ross Grocers, Inc. v. Sansoucy*, 136 B.R. 20, 23 (Bankr. D. N. H. 1992) ("An oral misrepresentation that certain collateral was free and clear of any liens is actionable under 523(a)(2)(A).")). Similarly, representations to repay a loan are "not statements as to [a debtor's] overall financial health." *In re Joelson*, 427 F.3d at 715. The statements that Ms. Lopez would sell her home, go back to work at Fair Isaacs, and produce and sell artwork do not reflect her overall financial health, and do not disclose information related to her balance sheet or income statement. The bankruptcy court did not consider Ms. Lopez's representations related to her credit card debt or retirement funds. Instead, the court considered Ms. Lopez omission of those facts as part of a course of conduct from which an intent to deceive was inferred. Accordingly, the bankruptcy court did not rely improperly on oral statements of Ms. Lopez's overall financial health to conclude that the loan was non-dischargeable pursuant to Section 523(a)(2)(A).

### Issues Raised For the First Time in Reply

In her reply memorandum, Ms. Lopez raises a number of issues not addressed in her opening memorandum. For instance, Ms. Lopez argues that the bankruptcy court erred by failing to consider that

Mr. Pagliero had a duty to support his spouse pursuant to California law. This issue was not addressed in Ms. Lopez's opening brief.[7] In addition, Ms. Lopez challenges other findings of fact by the bankruptcy court, including whether Ms. Lopez disclosed her credit card debt before the loan was made, whether Ms. Lopez concealed the refinancing of her property; and whether Ms. Lopez concealed the withdrawal of her retirement funds. These arguments were not raised specifically in her opening memorandum. "Arguments not raised by a party in [her] opening brief are deemed waived." *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999); *Eberle v. City of Anaheim*, 901 F.2d 814, 817-18 (9th Cir. 1990) ("It is well-established in this circuit that the general rule is that appellants cannot raise a new issue for the first time in their reply briefs."). Accordingly, this Court rejects these arguments as waived.

## Attorneys Fees

Mr. Pagliero requests this Court to direct the bankruptcy court to entertain a motion for attorney's fees related to this appeal. Mr. Pagliero makes clear that he does not appeal the bankruptcy court's decision to deny attorney's fees at trial, and requests only attorneys' fees for this appeal. Nevertheless, Ms. Lopez argues that because Mr. Pagliero failed to present evidence of attorneys' fees at trial, he is precluded from raising the issue on appeal.

Ordinarily, a prevailing party is not entitled to collect a reasonable attorneys' fee from the party that did not prevail. This default rule can be overcome by statute and by an enforceable contract allocating attorney's fees. *Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443, 448 (2007). An "otherwise enforceable contract allocating attorney's fees (i.e., one that is enforceable under substantive, nonbankruptcy law) is allowable in bankruptcy except where the Bankruptcy Code provides otherwise." *Id*.

The Installment Note includes an attorneys' fees provision, which reads: "Should suit be commenced to collect this note or any portion thereof, such sum as the court may deem reasonable shall be added hereto as attorney's fees." Mr. Pagliero relies upon this provision to request that this Court direct the bankruptcy court to consider an award of fees and costs for the appeal portion of these

---

[7] In the opening memorandum, Ms. Lopez included a single, bald-faced assertion that Mr. Lopez had a duty to support Ms. Lopez in the middle of a paragraph related to intent to defraud. This sentence–unsupported by law or argument–is insufficient to present this issue in his opening memorandum.

proceedings. Because the issue of attorneys' fees is separate from the issue of attorney's fees at trial, this argument is not waived. In the absence of meaningful opposition, this Court GRANTS Mr. Pagliero's request.

## CONCLUSION

For the foregoing reasons, this Court AFFIRMS the Discharge Order of the bankruptcy court. In addition, this Court DIRECTS the bankruptcy court to entertain a motion brought by Mr. Pagliero for attorney's fees and costs on appeal.

IT IS SO ORDERED.

**Dated:   September 23, 2011**                     /s/ Lawrence J. O'Neill
                                                    UNITED STATES DISTRICT JUDGE